**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**RODNEY RUCKER**                                                                              **PLAINTIFF**

**VS.**                                      **CIVIL ACTION NO.: 3:22-cv-00113-MPM-JMV**

**CITY OF SENATOBIA, MISSISSIPPI,
ET AL.**                                                                                       **DEFENDANTS**

**MUNICIPAL DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION
TO EXCLUDE EXPERT TESTIMONY OF ROBERT C. WILLIS**

Rucker's response confirms Defendants' exclusion request. Indeed, Rucker concedes that many of Willis' opinions are impermissible and agrees that he will not solicit testimony on certain subjects. But he argues that Willis should be allowed to opine on what police are taught about given situations and apply that training to the facts of this case. A central problem with that proposal is that Willis largely did not provide that information in his report. Rucker also argues that Willis should be allowed to offer testimony regarding the facts of this case that is clearly contradicted by video because it is "fodder for cross-examination[.]" That is not how expert testimony works.

Rucker begins by stating that there is no argument as to Willis' qualifications. But that is incorrect. While Defendants do not deny that Willis has law enforcement training, Defendants did attack the reliability of his opinions. *See* Doc. No. 72 at pp.6-7. As explained in the opening brief, although Willis states that he is using his training and uncited "commonly accepted practices" and "state and/or national protocols," he gives no details as to where this information came from, what it says, or appropriateness of these protocols to the facts. *E.g.*, *Geiger v. Monroe Cty., Miss.*, 2020 WL 5255403, *7 (N.D. Miss. Sept. 3, 2020) ("The witness must connect the experience to the conclusion offered, must explain why the experience is a sufficient

basis for the opinion, and must demonstrate the appropriateness of the application of the experience to the facts."). Willis has simply not shown that his "testimony is the product of reliable principles." Fed. R. Evid. 702.

Even if Willis could get over this hurdle, the testimony Rucker seeks to have admitted is lacking in many other ways. Each will be taken in turn.

- Rucker argues that "Willis' report details, from a law enforcement perspective, what factually constitutes a seizure, what constitutes consensual (or caretaker) contact, what constitutes a traffic stop, and how each different type of encounter is typically conducted based on best police training and practices. Further Willis' report details how officers are trained on what constitutes reasonable suspicion and what factors an officer should consider before making initial contact, instituting a traffic stop, or detaining and/or seizing a citizen. This information will be helpful to the jury and Willis should be allowed to provide that testimony." Doc. No. 78 at p.2. A review of Willis' opinion shows that he merely provides a summary of what the law is, a summary of what he believes the facts are, and legal conclusions. Doc. No. 71-1 at pp.23-28. The closest he comes to stating how officers are trained and what factors should be considered is by merely stating that "officers are taught that presence in a 'high crime area' is not enough justification to justify a 'Terry stop.' Officers are also taught that benign factors such as presence at a hotel and sitting in a car for an extended amount of time certain[l]y are not crimes, have many possible innocent explanations, and have no scientific relevance to predicting that criminal activity is afoot." Doc. No. 71-1 at p.28. This is, at best, merely legal conclusions disguises as opinions regarding compliance with "law enforcement practices and procedures[,]" which are impermissible. *Geiger*, 2020 WL 5255403 at *4.

- Rucker argues that "Willis should be allowed to opine that Marshall's demeanor and speech departed from any professional communications skills expected of law enforcement officers. Willis should further be allowed to testify regarding Marshall's conduct and that the manner in which Marshall addressed Rucker during this encounter unnecessarily escalated the situation and was a departure from acceptable police training and standards. Willis should be allowed to discuss de-escalation/negotiation tactics as an example of communication taught to law enforcement to help guide officers on how to handle certain situations and discuss how these tactics could have been employed by Marshall. His opinion(s) as to general communication standards, policies, and procedures in which law enforcement officers are trained would assist the trier of fact." Doc. No. 78 at p.3. There are several problems with this argument. The first is that this testimony would not assist the jury because everyone, including Marshall, agrees that his use of profanity violated policy and should not have occurred. The second problem is that, except for his discussion of the use of profanity, the only specific

- 2 -

information Willis gives about the use of training is a discussion of the use of "verbal judo" which he agrees Marshall used at the beginning of the encounter. He then disagrees with Marshall's decision to ask for identification instead of a room key to confirm Rucker's reason for being at the motel. Doc. No. 71-1 at pp.30-32. Finally, this testimony is neither reliable nor helpful to a jury. Although Willis opines that Marshall's language escalated the situation, Rucker had already ignored all commands and displayed confrontational behavior before Marshall began using profanity. *See generally* Marshall Body Cam Video (conventionally filed at Doc. No. 70, Ex. C.). And since it is all on video, a jury can determine for themselves whether the situation was escalated.

- Rucker argues that Willis' opinion "that there was no impending danger, overriding concern, total lack of progress or fear that Mr. Rucker might escape at the time the officers broke Rucker's window . . . may be touching on the ultimate issues [but] are also factors which officers are trained to recognize in order tor proceed with higher levels of force[.]" Doc. No. 78 at p.3. Therefore, Rucker argues that "Willis should be allowed to offer this testimony to the jury in order to inform the jury from a police perspective under what circumstances officers following proper training protocols would be able to proceed with the force the defendants utilized against Rucker." *Id.* at p.4. But, again, a review of the report shows that the report does not contain any information regarding the "proper training protocols" regarding the use of force in this instance – only information regarding de-escalation tactics. Doc. No. 71-1 at pp.32-34. And, again, the jury can determine if there was "impending danger, overriding concern, total lack of progress or fear that Rucker might escape" from the video.

- Rucker argues that "Willis should be allowed to explain what the *Graham* factors are from a law enforcement training perspective and to point the jury to facts pertinent to the reasonableness of the force applied and the *Graham* factors." Doc. No. 78 at p.4. But the report shows that Willis' opinions on these issues are exactly the kind this Court excluded in *Wroblewski v. Tyler*, 2018 WL 5261202, *4 (N.D. Miss. Oct. 22, 2018) (Mills, J.).

- Rucker argues that Willis should be allowed to testify to "the training that officers receive on intervening when witnessing improper actions of other officers and the circumstances under which such intervention is called for, as such testimony will be useful to the jury in determining whether Carter's actions were proper." Doc. No. 78 at pp.4-5. Willis' proffered opinion is lacking because, while it does contain a brief discussion of training in "contact officer over-ride," it fails to apply that training to the facts and connect that training to Carter's actions. *See* Doc. No. 71-1 at pp.34-35; *see also Geiger*, 2020 WL 5255403, at *7. In fact, he seems to admit that Carter could rely on Marshall's observations because Carter never got a good enough look at Rucker to determine if there was white powder on his nose. Doc. No. 71-1 at pp.34-35.

- Rucker argues that Willis "should be allowed to testify as to what proper training calls for on the topics of consensual stops, reasonable suspicion, de-escalation, and intervention. Willis should also be permitted to testify to the lack of evidence of such training in the defendants' training records." Doc. No. 78 at p.5. But in his report, Willis never properly opines on what he believes the proper training should be. As to the training received, Willis ignores the many training certificates held by the officers, including the state certification meaning they had been through the Academy, training on Fourth Amendment, and training on drug detection, among many other things. *See generally* Doc. No. 68-11.

The above opinions that Rucker argues should be admissible are either nonexistent, unreliable, entirely conclusory, speculative, or legal conclusions masquerading as analysis of procedure and are inadmissible. See *Geiger*, 2020 WL 5255403 at *4; *Wroblewski*, 2018 WL 5261202, at *4 & 7; *Estate of Sturdivant v. Smith*, 2021 WL 4048600, *6 (S.D. Miss. Jan. 4, 2021) ("The Fifth Circuit has held that district courts do not abuse their discretion when they exclude conclusory expert testimony bereft of any explained methodology or reasoning."); *N.S. v. City of Alexandria*, 919 F. Supp. 2d 773, 785-86 (W.D. La. 2013) ("In analyzing reliability, the trial court must assess whether the reasoning or methodology supporting the expert's testimony is valid. The point is to exclude expert testimony that is based solely on subjective belief or unsupported speculation.").

All of these opinions should also be excluded due to jury confusion, as explained in the opening brief. Doc. No. 72 at pp.7-8. Rucker fails to grapple with the plethora of case law holding that whether an officer violated policies or training is irrelevant to the constitutional analysis. *Id.* Neither does Rucker grapple with the argument that expert testimony will not help the jury understand the facts in this case because it was all caught on video. *Id.* at pp.5-6. Surely, it is not Rucker's argument that the jury cannot review the video and testimony of those involved and make a decision based on what they see and the credibility determinations that they may make. That is exactly the role of the jury.

Finally, it was explained in the opening brief that Willis' testimony is unreliable because it is based on clear contradictions to the video and mischaracterizations of the record. *Id.* at pp.8-9. Rucker's argument in this regard is that it should be left for the jury to determine whether his characterizations are accurate. Rucker apparently believes that he should be allowed to put an expert on to testify to facts that are clearly contradicted by video. Of course, that is not correct. It is Rucker's burden to show that Willis' testimony is admissible, that it will "aid the jury in resolving factual disputes[,] and that it is supported by "good grounds." *Wroblewski*, 2018 WL 5261202, at *2; *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998); *N.S.*, 919 F. Supp. 2d at 785-86 (The party offering expert testimony "bears the burden of establishing 'by a preponderance of the evidence that the testimony is reliable.'"). And it is beyond debate that this Court need not accept facts that are clearly contradicted by video. *Angulo v. Brown*, 978 F.3d 942, 947-48 (5th Cir. 2020) ("Thus, we consider 'the facts in the light depicted by the videotape,' resolving conflicts in the nonmovant's favor only where Angulo's assertions are not 'blatantly contradicted' by video evidence.") (quoted case omitted). It therefore also should not allow facts contradicted by video to be testified to in front of a jury.

* * * *

It was Rucker's burden to show that Willis' testimony adheres to Rule 702. He has not done so, instead conceding that much of Willis' opinions are inadmissible. Willis' entire testimony should be excluded for all of the reasons explained here and in the opening brief.

For these reasons, the motion to exclude should be granted.

Dated: July 19, 2023.

PD.42598676.1

- 6 -

Respectfully submitted,

PHELPS DUNBAR, LLP

BY:   */s/ Mallory K. Bland*
      G. Todd Butler, MB # 102907
      Mallory K. Bland, MB # 105665
      4270 I-55 North
      Jackson, Mississippi 39211-6391
      Post Office Box 16114
      Jackson, Mississippi 39236-6114
      Telephone: 601-352-2300
      Telecopier: 601-360-9777
      Email: butlert@phelps.com
             blandm@phelps.com

**ATTORNEYS FOR DEFENDANTS**

PD.42598676.1

## CERTIFICATE OF SERVICE

  I, MALLORY K. BLAND, do hereby certify that on July 19, 2023, I electronically filed the above and foregoing *MEMORANDUM* with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel of record.

              *Mallory K. Bland*
              MALLORY K. BLAND