IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**RODNEY RUCKER**                                                                                           **PLAINTIFF**

V.                                                                                                       NO: 3:22-CV-113

**CITY OF SENATOBIA, MISSISSIPPI,**                                                         **DEFENDANT**
*et al.*

## OPINION AND ORDER

This matter is before the Court on the Motion for Summary Judgment filed by Defendants City of Senatobia, Mississippi; William Carter; Terreous "TJ" Johnson; and James Marshall. (ECF No. 68). The motion is fully briefed, and the Court has thoroughly reviewed the record and carefully considered the applicable law. This is the decision of the Court.

### BACKGROUND

Plaintiff Rucker stayed overnight as a guest of the Dreamland Inn and Suites in Senatobia, Mississippi, on February 11, 2023.[1] He left the hotel building before dawn the next morning planning to work an early shift at McDonalds. He got into his car, which was legally parked in front of the hotel, and started the engine. He sat in the car, allowing the engine to warm.

According to Defendants, Dreamland is located in an area of Senatobia known for criminal activity. On patrol in the area, Officer Marshall observed Mr. Rucker sitting in his car with the motor running. The parties dispute how long Mr. Rucker had been there. Officer Marshall decided to investigate and parked his vehicle behind Mr. Rucker. Footage from Officer Marshall's body camera depicts what happened next. Officer Marshall approaches the driver's side of Mr. Rucker's

---

[1] For the purpose of summary judgment, the Court accepts Plaintiff's version of the facts, as supported by record evidence, as true, and draws all reasonable inferences in favor of Plaintiff. The Court is making no factual findings in this Opinion.

car with a flashlight. Officer Marshall greets Mr. Rucker, "hey – what's going on man – I'm Officer Marshall, Senatobia Police Department." (ECF 75-1, 0:05). Mr. Rucker rolls his window partway down and looks inquisitively at Officer Marshall, who states, "the reason why I'm getting out with you, man, you been sitting here for a while and this is a high area for, like, narcotics, prostitution, and stuff like that." (*Id.*, 0:10-0:15). Mr. Rucker inquires, "who called?" (*Id.*, 0:15-18). Officer Marshall explains that no one called, and that he was just patrolling and had observed Mr. Rucker sitting in his car with the motor running "for a while." (*Id.*, 0:18-21). Mr. Rucker responds that he is warming up the car. (*Id.*, 0:22-25).

Officer Marshall continues to talk with Mr. Rucker, saying that he "just wants to make sure everything is on the up and up" and asking him whether he had a room at the hotel. (*Id.*, 0:26-0:38). Mr. Rucker responds that he stayed in Room 105. (*Id.*, 0:38-41). Officer Marshall presses on, asking Mr. Rucker whether he has identification, "so I can advise Dispatch who I'm talking to." (*Id.*, 0:42-46). Mr. Rucker says that he does not have identification with him, and Officer Marshall asks for his Social Security Number. (*Id.*, 0:47-1:02). Mr. Rucker says that he does not know it. (*Id.*, 1:03). Officer Marshall says "okay, what's your name, man?" (1:04-06). Mr. Rucker responds, "Rodney." (*Id.*) Officer writes down the name and asks Mr. Rucker for his birthday. (*Id.*, 1:07-1:14). At that point, Mr. Rucker asks Officer Marshall "what's the reason?", and Officer Marshall says, "I just told you the reason." (*Id.*, 1:15-1:26). Mr. Rucker points out that anyone could be coming in and out of the hotel and attempts to say more, but Officer Marshall interrupts and talks over him, stating that "when we see people sitting in their vehicles, we get out with them, man, to make sure everything is on the up and up." (*Id.*, 1:27-1:41). Mr. Rucker responds that it is cold and that vehicles need to be warmed up. (*Id.*, 1:42-1:43).

Officer Marshall continues to talk, eventually stating that "I'm not saying you're lying…we're just making sure everything's good…." (*Id.*, 1:44-2:13). Officer Marshall says, "now I'm just asking you to identify yourself," and Mr. Rucker slowly shakes his head and says, "I ain't got to identify myself." (*Id.*, 2:14-2:19). Officer Marshall tells him he has to, and Mr. Rucker again asks, "what's the reason?" (*Id.*, 2:20-2:29). Mr. Rucker suggests that Officer Marshall speak with the manager of the hotel. (*Id.*, 2:30-2:36). Mr. Rucker reiterates that he does not have to identify himself, and Officer Marshall tells him he has to, "because right now man, you're part of an investigation." (*Id.*, 2:37-2:43). Mr. Rucker shakes his head, saying "no I'm not," and asks how he can be part of an investigation. (2:44-2:47). Officer Marshall speaks over him again, saying, "yes, you are." He instructs Mr. Rucker to get out of the car. (*Id.*, 2:45-2:50). Mr. Rucker says no and rolls up his window. (*Id.*, 2:49-2:50). Officer Marshall starts shouting, "open that door, or I'm gonna get you out." (*Id.,* 2:51-55). Mr. Rucker cracks the window and says, "you violating me, you violating me already. You violated me when you first came up here; I didn't do nothing." (*Id.*, 2:56-3:01). Officer Marshall does not acknowledge the statement and continues to repeatedly direct Mr. Rucker to open the door. (3:02-3:07). Mr. Rucker refuses, arguing that there is no reason for him to be investigated. (*Id.*, 3:08-3:17).

Officer Marshall grows louder, and the situation appears to escalate. Officer Marshall calls Officer Carter over to Mr. Rucker's car. (*Id.*, 3:18-3:27). Suddenly Officer Marshall points at Mr. Rucker and says to Officer Carter, "Look at the white powder on his nose. Look at the white powder." (3:30-3:36). This is the first time Officer Marshall has mentioned white powder.[2] Officer Carter does not say anything in response. Officer Marshall again directs Mr. Rucker to step outside

---

[2] The Court makes no factual determinations at this stage of the case but notes that if there is any white powder on Mr. Rucker's person, it is not readily visible in the video, and the Court does not see it.

3

the vehicle. Mr. Rucker refuses, stating that he needs to go to work, and reiterating that "you are already violating me." (*Id.*, 3:48-3:53). Officer Marshall repeats "get out of that car," while Officer Carter says to Mr. Rucker, "this is gonna go bad for you [if you don't get out of the car], okay." (*Id.*, 3:54-4:02). The officers and Mr. Rucker go back and forth in this manner, and Officer Marshall calls for backup. (*Id.*, 4:03-4:17). Officer Marshall shines his flashlight at Mr. Rucker and says to Officer Carter, "you see the white powder?" (*Id.*, 4:20-4:30). Officer Carter again says nothing in response.

Mr. Rucker comments that the officers have not read him his rights. (*Id.*, 4:30-4:34). Mr. Rucker continues to verbally protest the situation. Officer Marshall tells him that if he does not exit the car, "it's gonna go badly." (*Id.*, 4:50-4:54). Officer Marshall says he is trying to be patient, and Mr. Rucker says, "you just want someone to pick on." (*Id.*, 4:55-5:03). Mr. Rucker sits quietly in his car for a moment, and then he and Officer Marshall have a back-and-forth verbal exchange, saying to each other "you don't know me," "you don't know ME," repeatedly. (*Id.*, 5:20-5:27). Mr. Rucker abruptly says, "I know you," and Officer Marshall becomes upset and shouts, "you [expletive] threatening me? You threatening me?" (*Id.*, 5:28-5:33). Officer Marshall taunts, "who am I? Huh? Who am I?" and asks again, "so you [expletive] threatening me right now?" (*Id.*, 5:35-5:44). Mr. Rucker says, "you the Police."

Officer Marshall tells Mr. Rucker that this is his last chance to come out of the car. (*Id.*, 6:35-6:36). Mr. Rucker declines. No one tells Mr. Rucker that if he does not get out, someone will break into the car – there is no specific warning about what is to come after the "last chance." Instead, Officer Johnson simply smashes the rear window of Mr. Rucker's car. The officers start shouting, "get out of the car! Get out of the car!" and shouting expletives. (*Id.*, 6:40-6:49). The footage becomes jerky as the Mr. Rucker exits the car. The officers wrestle him about, shouting

4

"turn around! Turn around!" (*Id.*, 6:50-7:10). They push him onto the ground, face down, and handcuff him. (*Id.*, 7:08-7:10) Mr. Rucker's phone is on the ground, and Officer Marshall appears to kick or push it, then says "aw, man, hate it for your phone, dude." (*Id.*, 8:31-835). Officer Marshall continues shouting about "all that [expletive] powder on your nose." (*Id.*, 7:38-7:39). Again, no one else mentions white powder.

After handcuffing Mr. Rucker, the officers search Mr. Rucker's pants pockets and find no drugs or other contraband. (*Id.*, 8:40-8:55). Officer Marshall shouts that he expects to find drugs in the car, and Mr. Rucker says that he has none. (*Id.*, 8:56-10:00.) The video ends. There is no record evidence that any drugs or other contraband were found in the car or on Mr. Rucker's person.

Mr. Rucker filed this lawsuit in 2022. He brings a series of claims under 42 U.S.C. § 1983 and the Constitution against the individual defendants, asserting unlawful seizure and arrest; First Amendment retaliation; and excessive force. He contends that the City of Senatobia bears municipal liability for the constitutional violations he alleges.

## LEGAL STANDARDS

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute as to material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 248 (1986). At the summary judgment stage, the court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000). If a moving party shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law, the

5

nonmoving party "must come forward with specific facts showing a genuine factual issue for trial." *Harris ex rel. Harris v. Pontotoc Cty. Sch. Dist.*, 634 F.3d 685, 690 (5th Cir. 2011). "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.2d 1069, 1075 (5th Cir. 1994)). "If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted." *Little*, 37 F.3d at 1075.

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *DeMarco v. Bynum*, 50 F.4th 479, 483 (5th Cir. 2022) (internal quotation marks omitted). An official who violates such a right "is still entitled to qualified immunity if his or her actions were objectively reasonable." *Id.* (quotation marks omitted). In considering a motion for summary judgment based on the affirmative defense of qualified immunity, courts in the Fifth Circuit "engage in a two-pronged inquiry. First, the constitutional question, asking whether the officer's conduct violated a federal right. Second, asking whether that right was clearly established at the time of the violation." *Crane v. City of Arlington, Texas*, 50 F.45h 453, 463 (5th Cir. 2022).

**DISCUSSION**

1. *Claim of Unlawful Seizure and Arrest*

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. "A temporary, warrantless detention of an individual constitutes a seizure for Fourth Amendment purposes and may only be undertaken if the law enforcement officer has reasonable suspicion to believe that a crime has occurred or is in the offing." *United States v. Flowers*, 6 F.4th

6

651, 655 (5th Cir. 2021) (citing *Terry v. Ohio*, 392 U.S. 1, 30-31 (1968)). A seizure under the Fourth Amendment must be "justified at its inception" and "occurs when, under the totality of the circumstances, a law enforcement officer, by means of physical force or show of authority, terminates or restrains a person's freedom of movement." *Id.* If ambiguity exists, "the test that applies is whether 'in view of all the circumstances…, a reasonable person would have believed that he was not free to leave.'" *Id.* (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). To be lawful, a warrantless arrest must be based on probable cause, which exists "when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. McCowan*, 469 F.3d 386, 390 (5th Cir. 2006) (quotation marks omitted).

Genuine issues as to material fact preclude summary judgment on this claim. A factfinder must determine what happened. On this record, a reasonable juror could find that Officer Marshall seized Mr. Rucker as soon as he parked behind his car and approached him and began questioning him; that Officer Marshall lacked reasonable suspicion to believe that a crime had occurred or was in the offing; and that the seizure violated Mr. Rucker's rights under the Fourth Amendment. A reasonable juror could find the arrest unlawful. The record could support a finding that Officer Marshall shouted about "white powder" that was not visible in the video to create a record to justify arresting Mr. Rucker. The record could support a finding that Officer Marshall deliberately escalated tension and provoked Mr. Rucker to create conflict that might justify an arrest. A reasonable juror could find that no probable cause existed for an arrest existed and that the arrest, which all three defendants carried out, violated Mr. Rucker's rights under the Fourth Amendment. On this record, summary judgment is not appropriate.

2. *Claim of First Amendment Retaliation*

Plaintiff Rucker contends that the officers arrested him in retaliation for his expression of disapproval of the officers' words and actions. To establish a First Amendment retaliation claim, a plaintiff must show that (1) he "was engaged in constitutionally protected activity"; (2) the defendants' "actions caused [the plaintiff] an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) "the defendants' adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

Mr. Rucker engaged in constitutionally protected speech in answering Officer Marshall's initial questions, asking for an explanation for his detention, and questioning the explanation. Body camera footage and other record evidence could support a finding that Officer Marshall became aggravated and that, along with the other officers, he retaliated by unlawfully arresting Mr. Rucker, shattering his car window, and breaking his phone. A reasonable juror could find that this conduct would discourage a person of ordinary firmness from speaking with law enforcement officers. Summary judgment as to Mr. Rucker's First Amendment retaliation claim is not warranted.

3. *Claim of Excessive Force During Arrest*

"The Fourth Amendment creates a right to be free from excessive force during a seizure." *Byrd v. Cornelius*, 52 F.4th 265, 270 (5th Cir. 2022) (internal quotation marks omitted). To establish a claim of excessive force under the Fourth Amendment, a plaintiff "must demonstrate: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Id*. (quotation marks omitted). A determination of whether a use of force was reasonable under the Fourth Amendment "requires careful attention to the facts and circumstances of each case, including (1) the severity of the crime

8

at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* (internal quotation marks omitted). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene" and not with hindsight. *Id.* (quotation marks omitted). The "overarching question is whether the officers' actions [were] objectively reasonable in light of the facts and circumstances confronting them." *Id.* (internal quotation marks omitted). "[W]here an individual's conduct amounts to mere 'passive resistance,' use of force is not justified." *Trammel v. Fruge*, 868 F.3d 332, 341 (5th Cir. 2017). "Officers may consider a suspect's refusal to comply with instructions … in assessing whether physical force is needed to effectuate the suspect's compliance. However, officers must assess not only the need for force, but also the need and the amount of force used." *Id.* (internal quotations omitted).

Genuine disputes as to material facts preclude summary judgment on Mr. Rucker's claim of excessive force. Whether Mr. Rucker's conduct amounted to mere passive resistance is a question of fact. The extent to which each officer exercised force is also a matter for jury determination. And whether the use of force was excessive and unreasonably so requires careful consideration of the totality of the circumstances and is a quintessential question of fact. A factfinder must weigh the evidence and decide the merits of the claims of excessive force. Summary judgment is not appropriate on this record.

4. *Municipal Liability*

To establish municipal liability for claims under § 1983, a plaintiff must satisfy stringent standards. It is well-settled that municipalities bear liability only for their own acts and not acts attributed to them by principles of respondeat superior. *Monell v. Dept. of Soc. Svcs.*, 436 U.S. 658, 690 (1978). "A municipality is almost never liable for an isolated unconstitutional act on the

part of an employee; it is liable only for acts directly attributable to it through some official action or imprimatur." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009) (internal quotation marks omitted). "To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Id.* Official policy usually exists "in the form of written policy statements, ordinances or regulations" but "may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.* (internal quotation marks omitted). In addition, "a plaintiff must establish that the policy was the moving force behind the violation." *Id.* at 848. A "failure to train can amount to a policy if there is deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights on account of novices in law enforcement." *Id.* at 849.

The record reflects that the Senatobia Police Department has a written policy (the "Policy") regarding "field interviews" such as Officer Marshall's interview with Mr. Rucker. The Policy provides that "[o]fficers may stop individuals for the purpose of conducting a *field interview* only when *reasonable suspicion* is present." (ECF No. 68-10) (italics in original). The Policy defines reasonable suspicion as suspicion "that criminal activity has been, is being, or is about to be committed given the facts and circumstances of the situation." (*Id.*). In the City's 30(b)(6) testimony, Matthew Defore confirms that officers "shouldn't be engaging in *Terry* stops with people if they don't have reasonable suspicion." (ECF No. 68-3, PageID.312). The Court discerns no record support for a finding of "official action or imprimatur" serving as a moving force behind the claimed constitutional violations in this case. *See Peterson*, 588 F.3d at 847. The record contains ample evidence of law enforcement training and does not support a finding of deliberate

indifference to such training. The issue is whether the officers followed policy. Summary judgment in favor of the City is appropriate.

## CONCLUSION

For these reasons, the Court concludes that the individual defendants are not entitled to summary judgment on the claims against them and that the City of Senatobia, Mississippi is entitled to summary judgment in its favor.

**ACCORDINGLY, IT IS ORDERED**:

Defendants' Motion for Summary Judgment (ECF No. 68) is **DENIED** as to Defendants James Marshall, William Carter, and Terreous TJ Johnson, and is **GRANTED** as to Defendant City of Senatobia, Mississippi. Plaintiff's claim of municipal liability is dismissed.

**SO ORDERED AND ADJUDGED**, this the 13th day of October, 2023.

                                                      /s/ Michael P. Mills
                                                      **UNITED STATES DISTRICT JUDGE**
                                                      **NORTHERN DISTRICT OF MISSISSIPPI**